**JS-6 'O'**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAYNE WALLACE,<br><br>        Plaintiff,<br><br>   v.<br><br>LOUIS DEJOY, POSTMASTER GENERAL OF THE UNITED STATES POSTAL SERVICE, ET AL.,<br><br>        Defendants. | CV 21-08885-RSWL-SKx<br><br>**ORDER re: MOTION TO DISMISS** [27] |

    Plaintiff Shayne Wallace ("Plaintiff") brought an action against Defendant Louis DeJoy, the Postmaster General of the United States Postal Service ("Defendant"), alleging racial discrimination, gender discrimination, retaliation, harassment, disability discrimination, and failure to accommodate. The Court granted [25] Defendant's first Motion to Dismiss with leave to amend, and Plaintiff filed a Second Amended

1

Complaint [26].  Plaintiff now brings this Action against Defendant, alleging gender discrimination, retaliation, harassment, disability discrimination, and failure to accommodate.  Currently before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [27].

    Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS** Defendant's Motion.

## I.    BACKGROUND

**A.    Factual Background**

    Defendant hired Plaintiff to be a city carrier assistant in 2015.  Second Amended Complaint ("SAC") ¶ 9, ECF No. 26.  Prior to September 19, 2019, Plaintiff filed at least seven Equal Employment Opportunity complaints ("EEO complaints") against her supervisor and Defendant.  Id. ¶ 13.  Plaintiff alleges that her supervisor became aware of the EEO complaints and as a result, intentionally and purposely retaliated and harassed Plaintiff.  Id.

    Plaintiff references a now time-barred incident occurring in 2019, and states that subsequent to this incident, she "was again subjected to harassment, retaliation, and discrimination by Defendant."  Id. ¶¶ 11-12.

    Plaintiff contends that on or about December 18, 2019, Plaintiff received a fourteen-day suspension for missing two weeks of work between November 30, 2019, to

December 15, 2019. Id. ¶ 14. She argues that she provided Defendant with the appropriate medical documentation placing her off work, and through the negotiated grievance process, Defendant agreed to rescind the suspension. Id.

Subsequently, Plaintiff allegedly received another fourteen-day suspension on or about March 21, 2020, for missing work from January 17, 2020, through March 9, 2020. Id. ¶ 15. Plaintiff once again claims she provided Defendant with the required medical documentation excusing her from work, but Plaintiff's supervisor still issued the suspension. Id.

On or about June 15, 2020, Plaintiff's supervisor issued a "Notice of Removal" to Plaintiff for allegedly missing work during April 2020. Id. ¶ 16. But Plaintiff asserts she "provided Defendant with the necessary paperwork/documentation for her excused absences from work." Id.

Plaintiff also states that during this time, Plaintiff was pregnant, which Defendant was aware of. Id. ¶ 17. Further, on or about July 7, 2020, Defendant allegedly "continued to harass and create a hostile work environment towards Plaintiff, by and through [Plaintiff's supervisor] and other supervisors." Id. ¶ 18.

Subsequently, Defendant "again retaliated against Plaintiff." Id. ¶ 20. Specifically, Defendant was allegedly aware of Plaintiff's pregnancy and had

previously acquiesced to Plaintiff wearing a different uniform. Id. But, Plaintiff contends, "subsequent to Plaintiff filing and participating in the EEOC process, Defendant further retaliated against Plaintiff." Id. Plaintiff does not specify what these allegedly retaliatory actions were.

    Plaintiff states that throughout this time, she suffered from panic attacks, adjustment disorders with anxiety, and emotional distress due to the actions and conduct of her supervisor, among others. Id. ¶ 21. From approximately December 2019 to September 2020, Plaintiff provided medical documentation to Defendant "identifying her disabilities and request for accommodations, which included but were not limited to: time off from work and a possible transfer to another USPS facility." Id. ¶ 21. Plaintiff further claims that Defendant did not engage in a good faith interactive process to determine what Plaintiff's disabilities were and how Defendant could assist in providing a reasonable accommodation to Plaintiff. Id.

    Defendant required Plaintiff to submit medical leave documentation directly to her supervisor. Id. ¶ 23. Plaintiff alleges she submitted medical leave documentation and that her supervisor stopped accepting the documentation, wrote her up, suspended her, attempted to terminate her, and forced her to return from medical leave against her provider's orders. Id.

    Next, Plaintiff states that on several occasions,

she requested Defendant reassign her to a different facility so she could avoid her supervisor, but Defendant failed to act. Id. ¶ 24.

Plaintiff alleges that she exhausted administrative remedies "for Agency Case No. 4F-900-024720." Id. ¶ 8. She also alleges that in or around September 2020, Plaintiff, Defendant, and Plaintiff's supervisors "engaged in the EEOC grievance process in which Plaintiff complained and opposed the unlawful conduct of Defendant and its supervisors." Id. ¶¶ 19.

**B. Procedural Background**

Plaintiff filed her original complaint [1] on November 10, 2021, and her first amended complaint ("FAC") [18] on July 29, 2022. Defendant moved to dismiss [21] Plaintiff's FAC on August 12, 2022, and the Court dismissed [25] the FAC with leave to amend on October 24, 2022. Plaintiff filed a Second Amended Complaint [26] on November 20, 2022, and Defendant moved to dismiss [27] on December 5, 2022. Plaintiff opposed [28] on January 3, 2023, and Defendant replied [29] on January 10, 2023.

## II. DISCUSSION

**A. Legal Standard**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) allows a party to move for dismissal of one or more claims if the pleading fails to state a claim upon which relief can be granted. A complaint must "contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted).  Dismissal is warranted for a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007); see also White v. Mayflower Transit, LLC, 481 F. Supp. 2d 1105, 1107 (C.D. Cal 2007), aff'd sub nom. White v. Mayflower Transit, L.L.C., 543 F.3d 581 (9th Cir. 2008). ("unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials").  A court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party. Klarfeld v. United States, 944 F.2d 583, 585 (9th Cir. 1991).  "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 184 (2005) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  While a complaint need not

contain detailed factual allegations, a plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**B. Discussion**

Plaintiff has only exhausted her administrative remedies for Agency Case No. 4F-900-0247-20. As discussed in the Court's last Order, before filing Title VII and Rehabilitation Act complaints in federal court, federal employees must exhaust administrative remedies by consulting an EEO counselor within forty-five days of the allegedly unlawful conduct. See 29 C.F.R. § 1614.105(a); Sommatino v. United States, 255 F.3d 704, 708 (9th Cir. 2001); Cherosky v. Henderson, 330 F.3d 1243, 1245 (9th Cir. 2003). "Failure to comply with this regulation is 'fatal' to . . . a claim." Cherosky, 330 F.3d at 1245 (quoting Lyons v. England, 307 F.3d 1092, 1105 (9th Cir. 2002)).

The Court can only assess claims that (1) were alleged in the EEOC Charge and accepted for investigation, (2) are reasonably related to the allegations in the EEOC Charge, or (3) fall within an investigation that can reasonably be expected to grow

out of the charges. Sommatino, 255 F.3d at 708 (9th Cir. 2001).

Here, the EEOC only accepted four discrete events for investigation: when Plaintiff was (1) issued a Notice of Removal for Failure to Maintain Regular Attendance/Unacceptable Conduct/AWOL on June 15, 2020; (2) allegedly harassed by her supervisor on July 7, 2020; (3) sent home for wearing inappropriate footwear and uniform on September 15, 2020, through September 17, 2020; and (4) not granted reasonable accommodations. Decl. of Ellison, Ex. E, at 00011, ECF No. 28-1. Plaintiff's allegations that are not clearly time-barred will only be deemed timely if they fall within these four discrete events, relate to the events, or are reasonably likely to be discovered in an investigation of these events. See Sommatino, 255 F.3d at 708.

As discussed in the Court's last Order, the Court will only consider information that is timely pled or reasonably related to timely pled information.

1. Title VII Claims

 a. Claim One: Gender Discrimination

To establish a prima facie disparate treatment case, plaintiffs must offer evidence (1) that they belong to a protected class; (2) that they were qualified for their positions and perform[ed] their jobs satisfactorily; (3) that they experienced adverse employment actions; and (4) that similarly situated individuals outside their protected class were treated

more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1156 (9th Cir. 2010). Each "adverse employment action[]" must be adequately supported by "specific factual support." Mohsin v. California Dep't of Water Res., 52 F. Supp. 3d 1006, 1013-14 (E.D. Cal. 2014). A plaintiff can use either direct or circumstantial evidence of discriminatory intent to satisfy their prima facie burden. Godwin, 150 F.3d 1217, 1220 (9th Cir. 1998).

    Importantly, a plaintiff is not required to plead a prima facie case of discrimination to survive a motion to dismiss. Sheppard v. David Evans & Assoc., 694 F.3d 1045, 1050 n.2 (9th Cir. 2012). Instead, courts look to the elements of the prima facie case to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. See id.

    Plaintiff again fails to provide specific support for her claim that she was discriminated against due to her gender. See generally SAC. Indeed, Plaintiff lists several dates where she was absent from work, provided medical leave documentation, and her supervisor did not promptly excuse her absence, ultimately leading to Plaintiff being suspended from work and receiving a notice of removal. Id. ¶¶ 14—16. Plaintiff contends

that Defendant, through Plaintiff's supervisors, "continued to harass and create a hostile work environment toward Plaintiff." Id. ¶ 17. But Plaintiff does not explain what actions precisely constitute discrimination and does not claim that she was suspended from work due to Defendant's gender-related discriminatory motive.

Plaintiff now states that Defendant was aware she was pregnant and had previously acquiesced to Plaintiff wearing a different uniform due to her pregnancy. Id. ¶¶ 17, 20. Yet Plaintiff does not argue that she was discriminated against due to her pregnancy and she does not offer any evidence or even argue that her attendance-related suspensions and notice of removal were issued based on her gender. Accordingly, Plaintiff's claim for gender discrimination fails. See Austin v. City of Oakland, No. 17-CV-03284 YGR, 2018 WL 485969, at *3 (N.D. Cal. Jan. 18, 2018) ("Plaintiff alleges several contentious incidents involving his coworkers and supervisors and asserts that these incidents constitute gender discrimination. . . . Such conclusory assertions are insufficient to raise a plausible inference that Austin was treated differently because of his membership in the protected class.")

    b.  Claim Two: Retaliation

To establish a prima facie retaliation claim, federal employees must show (1) they engaged in protected activity; (2) their employer subjected them to

an adverse employment action; (3) and a causal link exists between the protected activity and the adverse action. Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000). The EEOC interprets adverse employment action as any adverse treatment based on a retaliatory motive reasonably likely to deter the party or others from engaging in protected activity; accordingly, the Ninth Circuit defines adverse employment action broadly. Id. at 1240, 1243.

    Plaintiff contends that she engaged in protected activity, such as filing EEO complaints and opposing unlawful practices. SAC ¶ 7. Plaintiff also raises time-barred incidents once again. Beyond those, Plaintiff argues that her supervisor issuing Plaintiff notices of removal was "harassing, discriminatory[,] and retaliatory due to Plaintiff's disability/medical condition and gender." Id. ¶ 17. This conclusory statement does not show that Defendant issued the notices due to Plaintiff's participation in protected activity, namely filing EEO complaints and opposing unlawful practices. Plaintiff also states that after she "engaged in the EEOC grievance process," Defendant "again retaliated against Plaintiff," but does not specify what actions were retaliatory. Id. ¶¶ 19-20. Plaintiff fails to support her retaliation claim with specific facts, and thus her claim fails. See Mohsin, 52 F. Supp. 3d at 1013-14 (finding the plaintiff did not plead a plausible claim where she asserted only that

defendant was "retaliating" against her without providing appropriate factual support).

      c.  Claim Three: Harassment

To establish a prima facie Title VII claim for harassment resulting in a hostile work environment, federal employees must allege that (1) they were subjected to verbal or physical conduct of a racial or sexual nature because of their identity in a protected category, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment. Manatt v. Bank of Am., NA, 339 F.3d 792, 798 (9th Cir. 2003); Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003), as amended (Jan. 2, 2004).

Plaintiff has not alleged a plausible harassment claim. Once again, Plaintiff's only potentially timely allegations are conclusory and without factual support. Indeed, Plaintiff makes the same bare allegations of harassment, discrimination, aggression, hostility, and retaliation without identifying specific facts. SAC ¶¶ 12, 22. Thus, Plaintiff's allegations do not amount to a plausible harassment claim.

  2.  Rehabilitation Act Claims

      a.  Claim Four: Disability Discrimination, Failure to Accommodate

In determining whether an employee has stated a claim for failure to accommodate under the Rehabilitation Act, courts look to the "substantive

standards of liability under the ADA." Blanchard v. LaHood, 2010 WL 11508016, at *5 (C.D. Cal. Mar. 8, 2010), aff'd, 461 F. App'x 542 (9th Cir. 2011). A prima facie case of failure to accommodate under the Rehabilitation Act requires a plaintiff to establish that: (1) she was disabled within the meaning of the ADA; (2) the employer had notice of her disability; (3) she is otherwise qualified to perform the essential functions of her job; and (4) despite its knowledge of her disability, the employer did not offer reasonable accommodations. See id. If "an employee requests accommodation[,] . . . the employer must engage in an interactive process to find a reasonable accommodation." Id.

Plaintiff has not alleged a plausible failure to accommodate claim. The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 29 C.F.R. § 1630.2; 42 U.S.C. § 12102(1)(A). "Major life activities" include "working." 42 U.S.C. § 12102(1)(B). Plaintiff alleges she suffered "panic attacks, stress, and other symptoms" and that her medical provider placed her "on medical leave." SAC ¶¶ 21, 23. She also asserts that her supervisor "caused [her] the panic attacks and stress." Id. ¶ 23. Moreover, it appears the accommodations she requested were time off from work and a possible transfer to another facility. Id. ¶ 21.

But Plaintiff does not plead that her "panic attacks, stress, and other symptoms" substantially limit her major life activities. Instead, she makes conclusory statements lacking factual support. Indeed, she contends that "[a]s a result of [her] disability, [she] was unable to perform the essential functions of her job position without reasonable accommodation" without specifying facts to support this claim. Id. ¶ 46. And to the extent that she is insinuating that she is prevented from working under her supervisor but could work in another facility under a different supervisor, she still fails to show substantial impairment. See Potter v. Xerox Corp., 1 F. App'x 34, 35 (2d Cir. 2001) (holding that an employee who was prevented from working under his supervisor due to his depression, anxiety, and panic attacks was not substantially impaired in his ability to engage in major life activity of working and thus was not "disabled."). Thus, Plaintiff has not stated a plausible claim for failure to accommodate.

        b. Claim Five: Disability Discrimination, Disparate Treatment

The Rehabilitation Act provides that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving

14

Federal financial assistance." 29 U.S.C. § 794(a). To establish discrimination on the basis of disability, a plaintiff must show that (1) she is disabled under the Act; (2) she is otherwise qualified; and (3) she suffered an adverse employment action because of her disability. See Snead v. Metro Prop. & Cas. Ins., 237 F.3d 1080, 1087 (9th Cir. 2001).

Plaintiff fails to establish that she suffered an adverse employment action due to her alleged disability. Plaintiff states that she was "was subject to adverse employment actions and treated less favorably than those similarly situated employees who were not part of [P]laintiff's protected class." SAC ¶ 53. She also claims that she was "retaliated against" due to her "disability/medical condition." Id. ¶ 17. But Plaintiff fails to provide facts supporting her statements and has not shown that any adverse employment actions she may have experienced occurred due to her alleged disability. Plaintiff instead asserts that she was subject to harassment and retaliation due to her EEO complaints. Id. ¶ 20. Finally, Plaintiff contends that "Defendant refused to provide [reasonable] accommodation[s]," but this assertion does not show that Defendant denied accommodations due to animus toward Plaintiff's alleged disability. Id. ¶ 47. Therefore, Plaintiff has failed to state a plausible claim for relief on her disability discrimination claim.
///

3. Leave to Amend

"Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend." Winebarger v. Pennsylvania Higher Educ. Assistance Agency, 411 F. Supp. 3d 1070, 1082 (C.D. Cal. 2019). "The court should give leave [to amend] freely when justice so requires." Fed. R. Civ. P. 15(a)(2). In the Ninth Circuit, "Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981). Against this extremely liberal standard, the Court may consider "the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" Ecological Rights Found. v. Pac. Gas & Elec. Co., 713 F.3d 502, 520 (9th Cir. 2013) (quoting Miller v. Yokohama Tire Corp., 358 F.3d 616, 622 (9th Cir. 2004))

Here the Court denies leave to amend. Plaintiff has had three opportunities to adequately plead her claims and has consistently failed to do so. See Ecological Rights Found., 713 F.3d at 520. Therefore, Plaintiff has shown that amendment is futile, and leave

16

to amend is **DENIED.**

### III.  CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's Motion to Dismiss **without leave to amend.**

**IT IS SO ORDERED.**

DATED: April 13, 2023          /S/ RONALD S.W. LEW
                        **HONORABLE RONALD S.W. LEW**
                        Senior U.S. District Judge